DUBENDORF LAW FIRM
Edward D. Dubendorf (SBN 275456)
ed@dubendorflawfirm.com
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
Tel: (310) 917-1070
Fax: (310) 917-1001

DANE LAW LLC
Stephen M. Dane (*Pro Hac Vice Application Forthcoming*)
sdane@fairhousinglaw.com
312 Louisiana Ave.
Perrysburg, OH 43551
Tel: (419) 873-1814

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SHAYNA COCHE and CEDRIC COCHE,<br><br>PLAINTIFFS,<br><br>v.<br><br>UNITED WHOLESALE MORTGAGE LLC and UNITED SHORE FINANCIAL SERVICES LLC,<br><br>DEFENDANTS. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. VIOLATION OF FAIR HOUSING ACT (FHA), 42 U.S.C. § 3604<br><br>2. VIOLATION OF FAIR HOUSING ACT (FHA), 42 U.S.C. § 3605<br><br>3. VIOLATION OF EQUAL CREDIT OPPORTUNITY ACT (ECOA), 15 U.S.C. § 1691<br><br>4. VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (FEHA), Cal. Civil Code § 12955<br><br>5. VIOLATION OF CALIFORNIA UNRUH CIVIL RIGHTS ACT (UNRUH ACT), Cal. Civil Code § 51<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Shayna Coche and Cedric Coche bring this action against United Wholesale Mortgage and United Shore Financial Services, LLC and allege as follows:

## I. NATURE OF THE ACTION

1. This civil rights action seeks damages caused to Plaintiffs Shayna and Cedric Coche ("Plaintiffs" or the "Coches") by a discriminatory lending practice implemented by Defendants United Wholesale Mortgage LLC and United Shore Financial Services LLC (collectively "Defendants" or "UWM") beginning in or about April, 2020. At that time, Defendants adopted and implemented a policy of rejecting otherwise qualified mortgage loan applicants because they were on maternity leave, regardless of whether the leave was paid or unpaid and regardless of whether the would-be borrower had sufficient liquid savings to compensate for any income lost during the leave period. Defendants' policy discriminated based on, and because of, sex and familial status.

2. Plaintiffs had applied and been approved for a mortgage loan from Defendants in March, 2020, and were scheduled for a closing on their loan in early April, 2020. In all respects, the Coches were qualified for the mortgage loan for which they had applied and which had been approved for funding by Defendants. Instead of closing on their loan, however, Defendants cancelled it. The reason for cancellation was a leave policy instituted by Defendants on or about April 8, 2020 (the "Maternity Leave Policy"), which stated:

> "If a borrower is on leave, they [sic] MUST return to work before we can close. This will include traditional leaves (like medical or maternity) . . . ."

3. Plaintiffs' mortgage broker subsequently confirmed that, pursuant to Defendants' Maternity Leave Policy, Defendants refused to consider Mrs. Coche's income to determine her eligibility for a mortgage loan because she was on maternity leave.

4.  No valid underwriting requirement supported Defendants' discriminatory policy of denying home mortgage loans to women on maternity leave. To the contrary, Defendants knew or should have known that such a policy was a violation of state and federal civil rights laws. Extensive guidance from federal regulators made it clear that lenders like Defendants here cannot deny mortgage credit simply because the would-be borrower is on, or plans to use, maternity leave.

5.  The U.S. Department of Housing and Urban Development ("HUD") and Fannie Mae have written guidance that directs lenders to consider income an applicant is earning while on maternity leave as well as any liquid savings she can document. These agencies have furthermore instructed that a lender may not require as a condition of granting credit that the borrower first return to work, as long as she has sufficiently documented her current and future earnings.

6.  Consistent with that guidance, HUD has pursued dozens of enforcement actions against lenders who, like Defendants, deny home mortgage loans to women on maternity leave and require that they return to work in order to qualify for a home mortgage loan.

7.  Defendants' discriminatory lending practices were motivated by discriminatory intent based on sex and familial status, and its lending practices had an unjustified and unlawful disparate impact on women and families with children, in violation of the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, California's Fair Employment and Housing Act ("FEHA"), Cal. Civil Code § 12955, and California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civil Code § 51.

8.  Plaintiffs therefore bring this action for damages and declaratory relief, attorneys' fees and costs, and such other relief as the Court may deem appropriate.

## II. JURISDICTION

9. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 3613(a), and 15 U.S.C. § 1691e.

10. This Court has supplemental jurisdiction over Plaintiffs' related claims under FEHA and the Unruh Act, pursuant to 28 U.S.C. § 1367(a) because those claims derive from a common nucleus of operative fact as Plaintiffs' federal causes of action. Plaintiffs' federal and state law claims all challenge the same discriminatory lending practices implemented by Defendants.

11. Venue is proper in this District under 28 U.S.C. §§ 84 and 1391(b)(2) because Plaintiffs' claims arose in and concern property located in Orange County, California. Venue is also proper under 28 U.S.C. § 1391(b)(3) because Defendants are subject to this Court's personal jurisdiction.

## III. PARTIES

12. Plaintiffs Shayna and Cedric Coche are the owners of the home located at 167 West Avenida San Antonio, San Clemente, California, 92672. They have resided in the home since September 2016. At the time of the incidents alleged herein, Plaintiff Shayna Coche was pregnant and on maternity leave from her place of employment, but intended to return to work at the conclusion of her leave.

13. Defendants United Shore Financial Services, LLC and its mortgage loan origination division United Wholesale Mortgage (collectively, "Defendants" or "UWM") are licensed mortgage lenders with their principal place of business located at 585 South Blvd E., Pontiac, MI 48341. Defendants are currently the largest wholesale mortgage lenders in the country. Defendant United Shore is a residential mortgage lender and loan servicer licensed by the Commissioner under the California Residential Mortgage Lending Act since July 28, 2009 (CRMLA No. 413-0995). United Shore is also licensed as a finance lender under the California Finance Lenders Law ("CFLL") since July 2, 2009 (CFLL No. 603-G994). United Shore had

1 previously been known as Shore Financial Services, Inc. before converting to the current name in 2012, and is also authorized to do business in California under the fictitious business names of Shore Mortgage and United Wholesale Mortgage.

14. Defendants are subject to federal and state laws prohibiting discrimination in housing and lending related transactions, including all regulations promulgated pursuant to such laws. Defendants regularly engage in "residential real estate-related transactions" within the meaning of 42 U.S.C. § 3605.

### IV.    FACTS

15. Plaintiffs applied to Defendants for a refinance mortgage loan in or about March 2020.  Plaintiffs were financially qualified for the refinance loan for which they had applied to Defendants. Indeed, Plaintiffs' mortgage loan application was approved by Defendants and assigned a Loan # 1220148838. Plaintiffs thereafter received all necessary closing settlement statements from Defendants and their loan was scheduled for closing in early April 2020 with BNT Title Company of California.

16. Instead of closing on their loan, however, Defendants cancelled it prior to funding. The reason for cancellation was a policy instituted by Defendants on or about April 8, 2020 (the "Maternity Leave Policy"), which stated:

> "If a borrower is on leave, they [sic] MUST return to work before we can close. This will include traditional leaves (like medical or maternity) as well as for people 'on leave' as an effect of COVID-19."

17. After the issuance of the Maternity Leave Policy, Plaintiffs received an Adverse Action Notice from Defendants dated April 15, 2020 indicating that their loan had been denied for the reason, "Excessive Obligations in Relation to Income." The Coches' broker subsequently confirmed that, pursuant to the Maternity Leave Policy, Defendants refused to consider Mrs. Coche's income to determine her debt-to-income (DTI) ratio because she was on maternity leave.

18. Defendants never made any attempt to confirm whether Mrs. Coche would return to work after her maternity leave, which was her and her employer's intent. Defendants also never made any attempt to confirm that her income would in fact continue as stated in the Plaintiffs' original application materials, and reconfirmed by them when they signed closing documents dated April 7, 2020.

19. As a direct result of the Maternity Leave Policy, Defendants made no individualized assessment of the Plaintiffs' ability to pay after Mrs. Coche returned to work from maternity leave. In fact, had Mrs. Coche's pre-leave and return-to-work income been properly considered, her Debt- to-Income (DTI) ratio was well within acceptable underwriting norms. Instead, Defendants simply applied its Maternity Leave Policy and declined the Plaintiffs' application.

20. The Defendants' statement of credit denial because Plaintiffs had "excessive obligations in relation to income" was false. Plaintiff Shayna Coche did in fact have sufficient income to support the loan for which plaintiffs had applied, as evidenced by the fact that Defendants had initially approved Plaintiffs' application when Mrs. Coche's income was properly considered.

21. But for Plaintiff Shayna Coche's pregnancy, Defendants would not have denied the Plaintiffs' application for mortgage financing. Plaintiff Shayna Coche's pregnancy made a difference in Defendants' treatment of her as compared to other mortgage loan applicants.

22. Upon information and belief, after Defendants denied Plaintiffs' application for a mortgage loan, Defendants continued to approve loans for applicants who were not pregnant or on maternity leave.

23. Defendants' Maternity Leave Policy is facially discriminatory on the basis of sex and familial status. Defendants' Maternity Leave Policy on its face treats applicants on "maternity leave" differently from other loan applicants, specifically loan applicants who are not pregnant or on maternity leave.

24. And because the Policy was published to Defendants' brokers as a "policy" applicable to all applicants, numerous otherwise qualified loan applicants who were pregnant and on maternity leave were adversely affected by the Maternity Leave Policy.

25. The Maternity Leave Policy instituted by Defendants and applied to the Plaintiffs and other loan applicants violate the prohibitions in the FHA relating to sex and familial status discrimination in violation of 42 U.S.C § 3604(b) and (c) and 42 U.S.C. § 3605, the prohibitions in the ECOA relating to sex discrimination in violation of 15 U.S.C. § 1691(a), the prohibitions in the FEHA, Cal. Civil Code § 12955, relating to sex, gender, and disability, and the prohibitions in the Unruh Act relating to sex and disability discrimination in violation of Cal. Civil Code § 51.

26. Defendants have previously entered into a Consent Order with the California Department of Business Oversight to resolve allegations of violations of California Financial Code section 50204, subdivision (o), and Civil Code section 2948.5 relating to mortgage loans.

27. Plaintiffs have attempted to mitigate the damages caused to them by Defendants' behavior, and have recently obtained a mortgage refinance loan from another lender that resulted in the payment of extra out-of-pocket costs. Plaintiff Shayna Coche has since returned to work without interruption in income.

## V. FEDERAL GUIDANCE REGARDING MATERNITY LEAVE AND MORTGAGE LOAN APPLICATIONS

28. During the period applicable to this complaint, Defendants maintained and applied a clear policy of denying home mortgage loans to women who were on maternity leave. Defendants would not fund or close a credit application from women on maternity leave until they had returned to work.

29. Defendants' Maternity Leave Policy is contrary to unambiguous guidance from authoritative sources regarding a lender's duty not to discriminate based on sex

and familial status. Defendants thus were on notice that their policy was discriminatory and unlawful.

30. Underwriting guidelines issued by Fannie Mae and Freddie Mac, and regulatory guidance issued by HUD, prohibit any assumptions about the negative effect on income of applicants for loans who are on temporary leave, such as maternity leave, and caution lenders to consider pre-leave income in the determination of debt-to-income ratio (DTI) if the employee will be returning to work. HUD, the U.S. Department of Justice, and the Consumer Financial Protection Bureau have all issued statements or initiated enforcement actions challenging maternity leave policies such Defendants' Maternity Leave Policy announced in or about April, 2020.

31. As early as 2010, HUD announced that it was unlawful for mortgage lenders to refuse to lend to expectant mothers or those on maternity leave. In response to a newspaper report describing the prevalence of such discrimination, HUD announced in July 2010 that it was launching "multiple investigations" of specific lenders. *See* U.S. Dep't of Housing & Urb. Dev., HUD To Investigate Mortgage Lenders Who Discriminate Against Expectant Mothers And New Parents, HUD No. 10-158 (July 21, 2010), *available at* https://archives.hud.gov/news/2010/pr10-158.cfm.

32. In June 2011, HUD announced a settlement with one mortgage lender regarding the failure to make loans based on pregnancy or parental leave, and simultaneously announced that it was charging another with similar discrimination. *See* U.S. Dep't of Housing & Urb. Dev., HUD Acts Against Pregnancy Discrimination In Home Mortgages, HUD No. 11-108 (June 1, 2011), *available at* https://archives.hud.gov/news/2011/pr11-108.cfm.

33. In 2014, HUD announced a $5 million settlement with Wells Fargo Home Mortgage resolving allegations that the lender discriminated against women who were pregnant, or had recently given birth, and were on maternity leave. *See* HUD Announces $5 Million Wells Fargo Settlement After Complaints of Discrimination

1 | Against Women on Maternity Leave or Pregnant, HUD No. 14-124, available at
https://archives.hud.gov/news/2014/pr14-124.cfm .

34. Guidance issued by purchasers of mortgage loans further confirms that Defendants had no legitimate basis for their Maternity Leave Policy. Fannie Mae has followed a rule that, in the case of an employee expected to be on leave as of the first mortgage payment date, a lender should consider a borrower's income while on leave and, if such income is lower than the borrower's usual income and insufficient to support mortgage payments, it also should take into account the borrower's savings as available to supplement the borrower's income. *See* Fannie Mae, Selling Guide: Fannie Mae Single Family B3-3.1-09 (Oct. 2, 2019) *available at* https://selling-guide.fanniemae.com/Selling-Guide/Origination-thru-Closing/Subpart-B3-Underwriting-Borrowers/Chapter-B3-3-Income-Assessment/Section-B3-3-1-Employment-and-Other-Sources-of-Income/1035647451/B3-3-1-09-Other-Sources-of-Income-10-02-2019.htm

35. Given this public guidance from HUD and Fannie Mae, Defendants knew or should have known that its Maternity Leave Policy was unlawful. Defendants' decision to cancel Plaintiffs' loan was reckless and in callous disregard for Plaintiffs' federally protected rights, thus warranting the imposition of punitive damages.

## VI. INJURY TO PLAINTIFFS

36. Plaintiffs have been injured by the discriminatory conduct of Defendants, which has caused them damages, including emotional distress, anxiety, economic loss, increased housing costs, the loss of civil rights, and other injuries. Therefore, Plaintiffs are entitled to compensatory damages.

37. Defendants' discriminatory conduct described herein is willful, intentional, and knowing, and/or implemented with callous and reckless disregard for the rights of Plaintiffs and would-be home mortgage loan borrowers throughout the country. Defendants knew or should have known that their policy of denying home mortgage

loans to women who are using maternity leave was unlawful and illegal, thus warranting an award of punitive damages.

## VII.   CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF – FAIR HOUSING ACT 42 U.S.C. § 3604**

38.   Plaintiffs re-allege and incorporate by reference the remainder of this Complaint, as if set forth fully herein.

39.   The acts, policies, and practices by Defendants alleged herein were motivated by discriminatory intent based on sex and familial status and have had an unlawful, unjustified disparate impact on women and families with children.

40.   Defendants' acts, policies, and practices also constitute discrimination because of sex and familial status in the terms, conditions, or privileges of sale of a dwelling, or in the provision of services or facilities in connection with such dwelling, in violation of 42 U.S.C. § 3604(b).

41.   Defendants caused to be made, printed, and published a notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicated a preference, limitation, or discrimination based on sex, handicap and familial status, or an intention to make any such preference, limitation, or discrimination, in violation of 42 U.S.C. § 3604(c).

**SECOND CLAIM FOR RELIEF – FAIR HOUSING ACT**
**42 U.S.C. § 3605**

42.   Plaintiffs re-allege and incorporate by reference the remainder of this Complaint, as if set forth fully herein.

43.   Defendants' acts, policies, and practices were motivated by discriminatory intent based on sex and familial status and have had an unlawful, unjustified disparate impact on women and families with children.

44. Defendants' acts, policies, and practices provided different terms, conditions, and privileges because of sex and familial status in connection with the making of residential real estate-related transactions, in violation of 42 U.S.C. § 3605.

**THIRD CLAIM FOR RELIEF – EQUAL CREDIT OPPORTUNITY ACT**

**15 U.S.C. § 1691**

45. Plaintiffs re-allege and incorporate by reference the remainder of this Complaint, as if set forth fully herein.

46. Defendants' acts, policies, and practices discriminated against Plaintiffs with respect to a credit transaction on the basis of sex.

47. Defendants' acts, policies, and practices violated the ECOA, 15 U.S.C. § 1691.

**FOURTH CLAIM FOR RELIEF – CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

**Cal. Civil Code § 12955**

48. Plaintiffs re-allege and incorporate by reference the remainder of this Complaint, as if set forth fully herein.

49. Defendants' acts, policies, and practices are motivated by discriminatory intent based on sex, familial status, and source of income, and have an unlawful, unjustified disparate impact on women and families with children.

50. Defendants' acts, policies, and practices constitute unlawful housing discrimination because of sex, familial status, and source of income, in violation of the FEHA, Cal. Civil Code § 12955.

# FIFTH CLAIM FOR RELIEF – CALIFORNIA UNRUH CIVIL RIGHTS ACT
## Cal. Civil Code § 51

51. Plaintiffs re-allege and incorporate by reference the remainder of this Complaint, as if set forth fully herein.

52. Defendants' acts, policies, and practices denied Plaintiffs the full and equal accommodations, advantages, facilities, privileges, and services of Defendants based on sex and disability.

53. Defendants' acts, policies, and practices constitute discrimination in violation of the Unruh Act, Cal. Civil Code § 51.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

A. Declare that Defendants' actions violate the FHA, 42 U.S.C. § 3601 *et seq.*, the ECOA, 15 U.S.C. § 1691 *et seq.*, FEHA, Cal. Civil Code § 12955, and the Unruh Act, Cal. Civil Code § 51, and that these violations were willful;

B. Enjoin Defendants and their directors, officers, agents, and employees from engaging in the conduct described herein and direct them to take all affirmative steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

C. Enter a judgment for compensatory damages to Plaintiffs in an amount to be proved at trial before a jury that would fully compensate Plaintiffs for the injuries alleged herein resulting from Defendants' unlawful conduct;

D. Enter a judgment awarding punitive damages to Plaintiffs in an amount to be proved at trial before a jury, that would punish Defendants for the willful, wanton, and reckless conduct alleged herein;

E. Award Plaintiffs their reasonable attorneys' fees and costs as allowed by law, including, but not limited to: the FHA, 42 U.S.C. § 3601 *et seq.*, the ECOA, 15 U.S.C. § 1691 *et seq.*, FEHA, Cal. Civil Code § 12955, and the Unruh Act, Cal. Civil Code § 51; and

F. Grant all such other relief as it deems just and equitable.

### IX. JURY DEMAND

Plaintiffs demand a jury trial on all triable issues.

DATED: February 26, 2021    DUBENDORF LAW FIRM

/s/ Edward D. Dubendorf

Edward D. Dubendorf (SBN 275456)
ed@dubendorflawfirm.com
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
Tel: (310) 917-1070
Fax: (310) 917-1001

DANE LAW LLC
Stephen M. Dane (*Pro Hac Vice Application Forthcoming*)
sdane@fairhousinglaw.com
312 Louisiana Ave.
Perrysburg, OH 43551
Tel: (419) 873-1814

*Attorneys for Plaintiffs*